IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TED NAPARALA, SR., *on behalf of himself and all others similarly situated*, | ) ) ) |
| Plaintiff, | ) No. 2:14-mn-00001-DCN ) No. 2:14-mn-03465-DCN ) |
| vs. | ) ) **ORDER** |
| PELLA CORPORATION, | ) ) |
| Defendant. | ) ) |

      This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella"). For the reasons set forth below, the court dismisses plaintiff's Wisconsin Deceptive Trade Practices Act claim; negligence claim; breach of implied warranty claims; and declaratory relief claim.

## I.  BACKGROUND

      Plaintiff Ted Naparala, Sr. ("Naparala") built a new home in August 2005 at which time Pella windows were installed in the home. Compl. ¶ 29. In December 2005, Naparala first discovered moisture in the windows. Id. ¶ 33. He contacted Pella, and a Pella representative inspected his home and denied that his windows contained any moisture or were otherwise damaged. Id. The windows gradually began to exhibit worse signs of moisture and wood rot, and Naparala contacted Pella again in November 2013 to make a warranty claim. Id. ¶ 34. Pella inspected the windows in January 2014 and sent a letter to Naparala stating that his windows "were black because of moisture" due to "high humidity in the area." Id. ¶ 35. Pella declined coverage under the warranty, stating that the warranty "does not cover condensation or high humidity situations." Id. Pella

1

provided Naparala with a quote to replace the window sashes, which included the cost of materials but did not include labor costs. Id. ¶ 36.

Naparala alleges that the windows suffer from various design deficiencies, including "a defect in the design of the sill extrusion and sill nailing fin attachment as well as a defect in the design of allowing a gap between the jamb gasket and the sill gasket." Id. ¶ 46. According to Naparala, these defects cause leaks and allow water to be "trapped between the aluminum and the operable wood frame causing damage to the Windows and other property within the home." Id. Naparala alleges that Pella was or should have been aware that its windows were defective and that Pella concealed its knowledge of repeated product defects. Id. ¶¶ 50, 52.

On May 20, 2014, Naparala filed a class action complaint against Pella in the United States District Court for the Eastern District of Wisconsin, alleging jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The complaint brings the following nine causes of action: (1) violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"); (2) negligence; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of express warranty; (6) fraudulent concealment; (7) unjust enrichment; (8) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (9) declaratory relief.

On August 15, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation. Pella filed the instant motion to dismiss on September 15, 2014. Naparala opposed the motion on October 21, 2014, and Pella replied on November 7, 2014. Pella's motion to dismiss has been fully briefed and is ripe for the court's review.

## II.   STANDARDS

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.   Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the transferee

circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Wisconsin substantive law and Fourth Circuit procedural law.

### III. DISCUSSION

Pella asserts that all of Naparala's claims should be dismissed. The court considers each of Pella's arguments in turn.

#### A.     Count I—Violation of the WDTPA

Pella contends that Naparala's WDTPA claim should be dismissed because he fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Def.'s Mot. 12.

Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud." See Am. Orthodontics Corp. v. Epicor Software Corp., 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010) (applying Rule 9(b) to a WDTPA claim). Rule 9(b) ensures that defendants have adequate notice of the conduct complained of, protects them from frivolous suits, eliminates fraud actions in which all the facts are learned after discovery, and protects defendants from harm to their goodwill and reputation. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). In order to satisfy Rule 9(b), the complaint must allege the

4

"who, what, when, where and how of the alleged fraud," U.S. ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014), or the "first paragraph of any newspaper story." Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 995 (8th Cir. 2007); see also U.S. ex rel. Elms v. Accenture LLP, 341 F. App'x 869, 872 (4th Cir. 2009) (holding Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").

Naparala's complaint is completely lacking in detail as to who made the misrepresentations, when they were made, or where they were made. Therefore, the complaint fails to plead any affirmative fraud with particularity. Moreover, allegations of fraud by omission do not support a WDTPA claim. See Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 245 (Wis. 2004) ("Silence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1). The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading.").

Because Naparala has failed to plead any affirmative act in violation of the WDTPA with particularity, the court dismisses his WDTPA claim.

### B.     Count II—Negligence

Next, Pella argues that Naparala's negligence claim is barred by the economic loss doctrine. Def.'s Mot. 11.

"The economic loss doctrine is a judicially created doctrine under which a purchaser of a product cannot recover from a manufacturer on a tort theory for damages that are solely economic." Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc., 651

N.W.2d 738, 741 (Wis. Ct. App. 2002) (citation omitted). "Economic damages are those arising because the product does not perform as expected, including damage to the product itself or monetary losses caused by the product." Id. (citation omitted). "Economic damages do not include losses due to personal injury or damage to other property." Id. (citation omitted). "In short, economic loss is damage to a product itself or monetary loss caused by the defective product, which does not cause personal injury or damage to other property." Daanen & Janssen, Inc. v. Cedarapids, Inc., 573 N.W.2d 842, 845 (Wis. 1998). The economic loss doctrine preserves the distinction between contract and tort law and seeks to "avoid drowning contract law in a sea of tort." Linden v. Cascade Stone Co., 699 N.W.2d 189, 192 (Wis. 2005) (citation and internal quotation marks omitted).

For purposes of the economic loss doctrine, "[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property' which precludes the application of the economic loss doctrine." Wausau Tile, Inc. v. Cnty. Concrete Corp., 593 N.W.2d 445, 452 (Wis. 1999) (articulating the "integrated system" test). In Bay Breeze, the Wisconsin Court of Appeals applied the integrated system test to a case with facts similar to those before the court. There, the plaintiff alleged that windows installed in certain condominium units were negligently designed and manufactured, resulting in water damage inside and outside the units and between the interior and exterior walls. 651 N.W.2d at 740. The court held that "the economic loss doctrine applies to building construction defects when, as here, the defective product is a component part of an integrated structure or finished product." Id. at 746. The court reasoned that "[b]ecause of the integral relationship

6

between the windows, the casements and the surrounding walls, the windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured." Id.

Here, Naparala alleges a variety of damage. First, he alleges that the windows and main structure of his home were damaged. Compl. ¶¶ 2 (alleging that the defect "result[ed] in premature wood rot and other physical damage to both the Windows and main structure"); 82 (alleging damages to include "costs to inspect, repair or replace their Windows and other property"). To the extent Naparala alleges damages to the windows themselves and the structure of his home, the economic loss doctrine and integrated system test apply to bar recovery in tort.

Naparala next argues that mold and fungal contamination of his home constitute damage to other property. Pl.'s Resp. 13; see Compl. ¶ 8 (alleging defect in cladding causes "an increase in the moisture content of the wood components beyond their capacity to resist wood rot and microbial colonization"). He relies on Northridge Co. v. W.R. Grace & Co., 471 N.W.2d 179, 180 (Wis. 1991), which held that a plaintiff was able to sustain a negligence claim when several of his buildings were contaminated with asbestos from the defendant's product, posing a health hazard. In Wasau Tile, the Wisconsin Supreme Court clarified its holding in Northridge. 593 N.W.2d at 457. There, the court instructed that Northridge is not applicable when, as here, the plaintiff is alleging that the product is of inferior quality. Id. Further, the court indicated that it developed the Northridge rule "in response to the unique facts of that case" as it involved a defective product containing an inherently dangerous material. Id. Finally, the court noted that the "public safety exception" to the economic loss doctrine created by the court

7

in Northridge was designed "to address special public safety concerns present in claims involving contamination by inherently hazardous substances like asbestos" and that "[c]ourts generally view asbestos cases as unique in the law." Id. at 457–58. While Naparala alleges wood rot and microbial colonization in the windows themselves, Compl. ¶ 8, he does not allege that his home is contaminated or that there are public safety concerns at issue. Therefore, Naparala cannot recover in tort for contamination.

Finally, Naparala alleges that water intrusion through their windows caused damage to "other property." Compl. ¶ 82 (alleging damages to include "costs to inspect, repair or replace their Windows and other property"). In a similar multidistrict litigation involving windows, this court determined that allegations of damage to "other property" were "too vague" to survive the economic loss rule, while allegations of damage to "other personal property," although "by no means highly detailed," properly stated a claim for negligence. Hildebrand v. MI Windows and Doors, Inc., 908 F. Supp. 2d 720, 726 (D.S.C. 2012). Therefore, Naparala's allegation of damage to "other property" is insufficient to state a claim for negligence.

The court dismisses Naparala's negligence claim because it is barred by the economic loss rule.

### C.     Counts III & IV—Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose

Pella argues that Naparala's claims for breach of implied warranties should be dismissed because there is no privity between Naparala and Pella. Def.'s Mot. 15.

"Wisconsin law requires privity of contract between the parties before liability can be founded on breach of express or implied warranty." Twin Disc, Inc. v. Big Bud Tractor, Inc., 582 F. Supp. 208, 215 (E.D. Wis. 1984) (citing Paulson v. Olson Implement

8

Co., 319 N.W.2d 855 (Wis. 1982)); see also Ball v. Sony Elecs., Inc., 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005) ("The implied warranties of merchantability and fitness for a particular purpose . . . by their terms are created only between seller and buyer as part of the sales contract, except to the limited and inapplicable exception of § 402.318."); Dippel v. Sciano, 155 N.W.2d 55, 59 (Wis. 1967) ("Wisconsin still requires privity between the plaintiff user and the manufacturer, or the supplier in breach-of-implied-warranty cases."). "Privity of contract is the relation that exists between two . . . contracting parties, and in cases of defective products this privity of contract is usually that between buyer and seller." Twin Disc, 582 F. Supp. at 215 (citation and internal quotation marks omitted). In a recent case, a Wisconsin district court held that where the plaintiff purchased a motor home from a dealer, the plaintiff could not sue the manufacturer because there was "no contract or sale" between the parties, and therefore "no implied warranties could have arisen as between those parties." Lamont v. Winnebago Indus., Inc., 569 F. Supp. 2d 806, 816 (E.D. Wis. 2008).

Naparala alleges that "Pella entered into contracts with retailers, suppliers and/or contractors to sell its Windows" and that the windows "were installed on Plaintiff's home." Compl. ¶¶ 29, 101, 108. Because Naparala does not allege any contract or sale between him and Pella, his implied warranty claims fail.

### D.     Count V—Breach of Express Warranty

Pella argues that Naparala's breach of express warranty claim should be dismissed because he does not allege any act in violation of the limited warranty nor does he adequately plead the existence of any other express warranty. Def.'s Mot. 18–20. In response, Naparala asserts that the terms of the limited warranty are unconscionable and

9

that Pella breached express warranties beyond the terms of the limited warranty.  Pl.'s Resp. 23–29.

The limited warranty included with Naparala's windows states:

> If Pella is given notice of a defect in materials or workmanship occurring within ten (10) years from the date of sale by Pella or its authorized dealer, Pella shall, at its sole option:  1) repair or replace the defective part(s) or product(s) (with cost of labor included only within two [2] years of the date of sale by Pella or its authorized dealer) or 2) refund the original purchase price.

Compl. ¶ 49; Def.'s Mot. Ex. 9.[1]  The limited warranty also states that it "is the exclusive warranty for the Covered Pella Products" and that "**NEITHER PELLA NOR SELLER MAKES ANY OTHER WARRANTIES, EXPRESS OR IMPLIED** . . . ."  Def.'s Mot. Ex. 9.

Pella argues that Naparala's allegations do not show that it breached the limited warranty.  Def.'s Mot. 18–19.  Rather, Pella argues that Naparala has alleged that the windows were defective due to "condensation," Compl. ¶ 30, which is excluded from the limited warranty.  See Def.'s Mot. Ex. 9 ("Pella is also not responsible for or makes no warranty as to:  1) Product failure, loss or damage due to: . . . High in-home humidity (condensation, frost, mold).").  However, Naparala alleges more extensive damage than simply condensation.  He alleges that the windows "allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures as described."  Compl. ¶ 30.  Moreover, Naparala alleges that when he contacted Pella regarding the problems, Pella "denied that his windows contained any moisture or

---

[1] In deciding a motion to dismiss, courts can consider documents that are attached to a motion to dismiss; that are clearly integral to, and relied upon, in the complaint; and whose authenticity no party disputes.  Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006).  Naparala quotes the limited warranty in his complaint, Compl. ¶ 49, and does not dispute the authenticity of Pella's exhibit.

were otherwise damaged." Id. ¶ 33. Pella again declined coverage under the warranty in early 2014. Id. ¶ 35; see also id. ¶ 53 ("Pella . . . has failed to timely honor its express . . . warranties."). Therefore, Naparala adequately pleads breach of the limited warranty.

Moreover, Naparala argues that the limited warranty's disclaimer is unconscionable and, therefore, should not be enforced. Pl.'s Resp. 25–27. Under Wisconsin law, a court is not required to enforce a contract or clause of a contract which it finds unconscionable as a matter of law. Wis. Stat. Ann. § 402.302(1). "To be declared invalid as unconscionable, a contract or contract provision must be determined to be both procedurally and substantively unconscionable." Aul v. Golden Rule Ins. Co., 737 N.W.2d 24, 32 (Wis. Ct. App. 2007). "Procedural unconscionability relates to factors bearing on the meeting of the minds of the contracting parties, such as age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." Id. "Substantive unconscionability pertains to the reasonableness of the contract terms themselves, that is, whether they are commercially reasonable or unreasonably favor the more powerful party." Id. Unconscionability is determined on a "case-by-case basis." Id.

Pella argues that Naparala has not alleged facts showing substantive unconscionability. Def.'s Reply 13. However, Naparala alleges that "Pella's shipping of the Windows with prior knowledge of the defects . . . makes the limitations of the Limited Warranty unconscionable in all respects." Compl. ¶ 50. A limitation on

warranty for a product the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability—at least at the pleading stage. See Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc., 2012 WL 1570057, at *10 (S.D. Fla. May 2, 2012) ("[I]f a product contains a known latent defect then any warranty limits may be unconscionable.").

Wisconsin law provides that "[w]hen it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Wis. Stat. Ann. § 402.302(2). At the motion to dismiss stage, Naparala has properly pleaded that the limitation on warranties clause contained in the limited warranty is unconscionable. Therefore, the court will not dismiss Naparala's breach of express warranty claim to the extent it is based on statements outside the limited warranty.

> E.     Count VI—Fraudulent Concealment

Pella argues that Naparala's fraudulent concealment claim should be dismissed because it fails to plead fraud with the particularity required by Rule 9(b). Def.'s Mot. 12.

As discussed above, Naparala has failed to plead an affirmative misrepresentation with particularity. However, many courts have recognized the difficulty of applying Rule 9(b)'s particularity requirement to fraudulent concealment or omission claims, and have instead applied a relaxed, less formulaic version of the rule. See, e.g., Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 533 (D. Md. 2013) (holding that Rule 9(b) is "less strictly applied" with respect to claims of fraud by

omission of material facts, because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation"); Carideo v. Dell, Inc., 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("The Rule 9(b) standard is relaxed in fraudulent omission cases" because in such cases, "a plaintiff will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." (internal quotation marks omitted)); In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."); Bonfield v. AAMCO Transmissions, Inc., 708 F. Supp. 867, 875 (N.D. Ill. 1989) ("Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place, and contents of the false representations or the identity of the person making the misrepresentation." (internal quotation marks omitted)).

Although the Fourth Circuit has not adopted this relaxed Rule 9(b) standard, a relaxed standard comports with the Fourth Circuit's instruction that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Additionally, the court finds the reasoning supporting a relaxed standard persuasive and therefore will apply it to Naparala's fraud-based claims to the extent they assert fraudulent omissions or concealment.

Whether Naparala's allegation of fraudulent concealment satisfies the relaxed Rule 9(b) standard is a close question. His complaint is not overly-detailed, but, as described above, the nature of a fraudulent omission makes it difficult to plead with detail. In a case with similar facts, a Maryland district court held that the plaintiffs had properly pleaded fraudulent concealment with particularity where they alleged: that the defendant was aware of a product defect and how the defendant became aware of the defect; that the defendant concealed the defect from the plaintiffs; and that the plaintiffs would have taken different actions had they known about the defect. Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 538–39 (D. Md. 2011); see also Whirlpool Corp., 684 F. Supp. 2d at 961.

Since Naparala has pleaded facts similar to those alleged in Doll—that Pella was aware of a defect, that Pella concealed the defect from consumers, and that plaintiffs would have taken different action had they known about the defect—the court denies Pella's motion to dismiss his fraudulent concealment claim.

### F.     Count VII—Unjust Enrichment

Pella argues that Naparala's unjust enrichment claim should be dismissed because it is barred by the statute of limitations and because Naparala has an adequate remedy at law. Def.'s Mot. 10, 13. The court will consider each argument in turn.

#### 1.     Statute of Limitations

Pella first asserts that Naparala's unjust enrichment claim is barred by the statute of limitations. Def.'s Mot. 10.

Under Wisconsin law, claims for unjust enrichment are subject to a six-year statute of limitations. Wis. Stat. § 893.43; Boldt v. State, 305 N.W.2d 133, 141 (Wis.

1981); Stapel v. Stapel, 789 N.W.2d 753, at *6 (Wis. Ct. App. 2010) ("Recovery based on unjust enrichment is sometimes referred to as a quasi-contract. As a claim based on quasi-contract, a claim for unjust enrichment is subject to the six-year statute of limitations set forth in Wis. Stat. § 893.43." (internal citations omitted)). Under § 893.43, a "cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred." CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp., 497 N.W.2d 115, 116 (Wis. 1993).

Naparala alleges that Pella was unjustly enriched when it retained revenues derived from his purchase of defective windows. Compl. ¶ 155. Naparala's house was built in August 2005, at which time the windows were installed. Id. ¶ 29. Therefore, the alleged "breach" occurred by at least August 2005, when Pella accepted and retained the purchase price. The statute of limitations on Naparala's unjust enrichment claim expired by August 2011. Because Naparala did not file this action until May 20, 2014, his unjust enrichment claim is time-barred unless the statute of limitations has been tolled.

Naparala argues that equitable estoppel tolls the statutes of limitations. Pl.'s Resp. 11. "Equitable estoppel is a court-made doctrine that may be applied when an action or non-action by the party against whom estoppel is asserted induces reasonable reliance by the other party, to that party's detriment." Stachowiak v. Shawano Cnty. Zoning Bd., 794 N.W.2d 928, at *1 (Wis. Ct. App. 2010). There are six rules to consider in determining the applicability of equitable estoppel: (1) the defendant must have been guilty of fraudulent or inequitable conduct; (2) the aggrieved party must have failed to commence the action within the statutory period because of his or her reliance on the defendant's acts or representations; (3) the acts, promises or representations must have

15

occurred before the expiration of the limitation period; (4) after the inducement for delay has ended, the aggrieved party may not unreasonably delay; (5) the defendant's affirmative conduct may be equivalent to a representation upon which the plaintiff may rely to his or her disadvantage; and (6) actual fraud, technically speaking, does not have to be present. Hester v. Williams, 345 N.W.2d 426, 431 (Wis. 1984) (citing State ex rel. Susedik v. Knutson, 191 N.W.2d 23, 25–26 (Wis. 1971)). The test for whether a party should be estopped from asserting the statute of limitations is "whether the conduct and representations of [the defendant] were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." Johnson v. Johnson, 508 N.W.2d 19, 21 (Wis. Ct. App. 1993) (citations omitted). "Proof of estoppel must be clear, satisfactory and convincing and is not to rest on mere inference or conjecture." Id. at 22.

Naparala alleges that Pella knew about the defects in the windows, Compl. ¶ 63, and that after he filed his warranty claims, Pella denied that his windows contained any defect and indicated that the windows were "black because of moisture" due to high humidity in the area. Id. ¶¶ 33–35. At the pleading stage, the court finds that Naparala has adequately alleged that equitable estoppel tolls the statute of limitations. The court does not have enough information to determine whether Naparala is actually entitled to equitable estoppel. That is a question for another day. Therefore, the court denies Pella's motion to dismiss his unjust enrichment claim on the basis that it is barred by the statute of limitations.

### 2. Adequate Remedy at Law

Pella also argues that Naparala's unjust enrichment claim is precluded by the existence of a contract between the parties. Def.'s Mot. 13.

Under Wisconsin law, "[t]he doctrine of unjust enrichment does not apply where parties have entered into an express or implied contract." Wackett v. City of Beaver Dam, 844 N.W.2d 666, at *4 (Wis. Ct. App. 2014) (unpublished) (citation omitted). However, for unjust enrichment to be inapplicable, a court must conclude that there was a "valid, enforceable contract between the parties." Cont'l Cas. Co. v. Wis. Patients Comp. Fund, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991).

Naparala alleges that the limited warranty is void because it is unconscionable and fails in its essential purpose. Compl. ¶¶ 50, 136. Because Naparala disputes the validity of the limited warranty, dismissal of his unjust enrichment claim based on the existence of the limited warranty is not proper at this time. See Cohen v. Am. Sec. Ins. Co., 735 F.3d 601, 615 (7th Cir. 2013) ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is not an express contract, then the defendant is liable for unjustly enriching himself at my expense."); Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012) (refusing to dismiss unjust enrichment claim where the plaintiff disputed the validity of the contract at issue by alleging that it was void as unconscionable).

### G.     Count VIII—Violation of the MMWA

Pella argues that the MMWA should be dismissed because the underlying state law warranty claims fail. Def.'s Mot. 20.

The MMWA does not create a warranty itself but is instead a vehicle for enforcing warranties created by state law. See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (holding that MMWA claims "hinge on the state law warranty claims"); Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) (noting that the MMWA borrows state law causes of action); Carlson v. Gen. Motors Corp., 883 F.2d 287, 291 (4th Cir. 1989) (holding that the MMWA "operates in conjunction with state law to regulate the warranting of consumer products" (emphasis in original)); Lamont, 569 F. Supp. 2d at 816 (noting that the MMWA "relies on state law to determine whether . . . a warranty arises in the first place").

The parties agree that whether plaintiffs' MMWA claim is cognizable depends on whether the state law warranty claims are cognizable. Def.'s Mot. 20; Pl.'s Reply 29. Because the court denies Pella's motion to dismiss Naparala's express warranty claim, it likewise will not dismiss his MMWA claim.

### H.     Count IX—Declaratory Judgment

Pella argues that Naparala's declaratory relief claim fails because it lacks a substantive foundation and because Naparala has an adequate remedy at law. Def.'s Mot. 14.

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201. The Declaratory Judgment Act is intended to help parties resolve legal disputes before either party can seek or has sought a coercive remedy through the courts. 10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure §

2751 (3d ed. 1998). Courts have "long recognized the discretion afforded to district courts in determining whether to render declaratory relief." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

Declaratory relief is inappropriate at this stage, as the merits of Naparala's substantive claims have not been adjudicated. See Kennedy v. MI Windows & Doors, Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v. OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps it substantive claims") (internal citations omitted); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Therefore, the court dismisses Naparala's claim for declaratory relief.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Pella's motion and **DISMISSES WITHOUT PREJUDICE** Naparala's WDTPA claim; negligence claim; breach of implied warranty claims; and declaratory relief claim.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 19, 2015**
**Charleston, South Carolina**