# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| TED NAPARALA, SR., *on behalf of himself and all others similarly situated*, | ) ) ) |
| Plaintiff, | ) No. 2:14-mn-00001-DCN ) No. 2:14-mn-03465-DCN |
| vs. | ) ) ) |
| PELLA CORPORATION, | ) **ORDER** ) |
| Defendant. | ) ) ) |

This matter is before the court on defendant Pella Corporation's ("Pella") motion for partial summary judgment. For the reasons set forth below, the court grants Pella's motion and dismisses Naparala's fraudulent concealment claim, unjust enrichment claim, and breach of express warranty claim to the extent it is based on non-written warranties outside of Pella's limited warranty.

## I. BACKGROUND

Plaintiff Ted Naparala, Sr. ("Naparala") began construction of his new home in September 2005. Def.'s Mot. Ex. 1, Naparala Depo. 19:24–25. He purchased Pella ProLine and Architect Series windows on August 25, 2005 from a Menard's retail store in Wisconsin and he and his son personally installed them in his home in November 2005. Id. at 35:11–14; Def.'s Mot. Ex. 3. He and his family moved into the home in February 2006. Id. at 20:6. Prior to purchasing the windows, Naparala contends that he had a discussion with a Menard's salesperson, read brochures regarding Pella windows, and saw a couple of advertisements on TV regarding Pella windows. Id. at 22:2–25;

1

38:17–23. Naparala testified that a Menard's salesperson told him that the windows were "good windows." Id. at 22:2–4; 26:6–7.

In 2006, Naparala began observing moisture problems with the windows and contacted Pella. Id. at 44:15–25. Naparala testified that all of the rooms in his home were affected by the moisture problems. Id. at 31:14. Specifically, Naparala testified that there was "[m]oisture on the inside of the windows" and that "[i]n real cold weather they actually had frost on them." Id. at 31:16–17. Naparala made a service claim under the limited warranty. Id. at 44:19–45:1. On March 23, 2006, VerHalen, Inc., an independent distributor of Pella products, sent a service technician to investigate Naparala's claim. Def.'s Mot. Ex. 5. The technician indicated that the windows were not sealing properly and adjusted the cranks on the windows so that they would crank tighter. Id. at 44:19–45:1.

According to Naparala's testimony, the technician did not specifically say that the problem was fixed, but Naparala assumed that it was. Id. at 65:21–66:4. Naparala testified that every year after the original service call he experienced water damage due to excessive moisture. Id. at 63:10–14. When asked whether he "believed that [he] still had a problem with the windows" "when [he] started seeing the water damage due to excessive moisture beginning to occur" every fall, Naparala answered in the affirmative. Id. at 65:1–11. In December 2013, Naparala contacted Pella to submit a warranty claim. Id. at 45:8–25. On January 27, 2014, a service technician from VerHalen, Inc. visited Naparala's home and denied warranty coverage, concluding that the issue with the windows was caused by excess humidity in the home. Def.'s Mot. Ex. 6.

On May 20, 2014, Naparala filed a class action complaint against Pella in the United States District Court for the Eastern District of Wisconsin, alleging jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The complaint brings the following nine causes of action: (1) violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"); (2) negligence; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of express warranty; (6) fraudulent concealment; (7) unjust enrichment; (8) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (9) declaratory relief. Naparala alleges that the windows suffer from various design deficiencies, including "a defect in the design of the sill extrusion and sill nailing fin attachment as well as a defect in the design of allowing a gap between the jamb gasket and the sill gasket." Compl. ¶ 46. According to Naparala, these defects cause leaks and allow water to be "trapped between the aluminum and the operable wood frame causing damage to the Windows and other property within the home." Id. Naparala alleges that Pella was or should have been aware that its windows were defective and that Pella concealed its knowledge of repeated product defects. Id. ¶¶ 50, 52.

On August 15, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation. Pella filed a motion to dismiss on September 15, 2014. Naparala opposed the motion on October 21, 2014, and Pella replied on November 7, 2014. After the court issued an order on Pella's motion to dismiss on May 19, 2015, Naparala's only remaining claims are for: (1) breach of express warranty; (2) fraudulent concealment; (3) unjust enrichment; and (3) violation of the Magnuson-Moss Warranty Act.

On October 2, 2015, Pella filed the instant partial motion for summary judgment, seeking judgment on Naparala's claims for fraudulent concealment, unjust enrichment, and breach of express warranty, to the extent the claim is based on extra-contractual representations outside of the Pella limited warranty. Naparala responded on October 19, 2015. In his response, Naparala stated that he was willing to stipulate to the dismissal of his unjust enrichment claim and breach of express warranty claim to the extent it relies upon extra-contractual representations outside of the limited warranty. Resp. 1. Therefore, the only remaining claim at issue in Pella's motion for summary judgment is Naparala's fraudulent concealment claim. Pella filed a reply on October 29, 2015. The motion has been fully briefed and is now ripe for the court's review.

## II.   STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). "In multidistrict litigation, the law of the transferee circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Wisconsin substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

Pella contends that Naparala's fraudulent concealment claim, based on Pella's failure to disclose the alleged defect in the windows, is barred by the applicable statute of limitations. Def.'s Mot. 13–14. In response, Naparala argues that he did not discover "essential facts that would have disclosed the nature of Pella's fraud" until 2014 when Pella quoted him the replacement cost of the windows and when he learned that some homeowners were getting their money back for window replacement costs. Pl.'s Resp. 8.

#### A.      Statute of Limitations

Naparala's fraudulent concealment claim must be commenced within six years of discovering the facts constituting fraud. Wis. Stat. Ann. § 893.93 (West) ("The following

actions shall be commenced within 6 years after the cause of action accrues or be barred: . . . An action for relief on the ground of fraud. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."). "[F]or purposes of claim accrual, 'it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. <u>What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud.</u>'" <u>John Doe 1 v. Archdiocese of Milwaukee</u>, 734 N.W.2d 827, 844 (Wis. 2007) (quoting <u>Stroh Die Casting Co. v. Monsanto Co.</u>, 502 N.W.2d 132 (Wis. Ct. App. 1993) (emphasis added)).

The date of discovery "is generally a question of fact for the jury and is a question of law only where the facts are undisputed." <u>Id.</u> (citing <u>Stroh</u>, 502 N.W.2d at 132). The discovery rule provides that a cause of action will not accrue "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of the injury but also that the injury was <u>probably caused by the defendant's conduct or product</u>." <u>Honeycrest Farms, Inc. v. Brave Harvestore Sys.</u>, 557 N.W.2d 257 (Wis. Ct. App. 1996) (citing <u>Borello v. U.S. Oil Co.</u>, 388 N.W.2d 140, 146 (Wis. 1986) (emphasis added)).

"The reasonable diligence requirement means that the plaintiff must exercise 'such diligence as the great majority of persons would use in the same or similar circumstances' to discover their injuries." <u>Id.</u> (quoting <u>Spitler v. Dean</u>, 436 N.W.2d 308, 311 (Wis. 1989)). "Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach." <u>Id.</u> When the "material facts

6

are undisputed, and only one inference can reasonably be drawn from them, whether a plaintiff exercised reasonable diligence in discovering her injury is a question of law," which the court may decide. Id. (quoting Groom v. Prof'ls Ins. Co., 507 N.W.2d 121, 124 (Wis. Ct. App. 1993)).

Naparala relies upon Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp., 291 N.W.2d 825 (Wis. 1980). In Wisconsin Natural Gas Co., the plaintiff contracted with third parties for the design and installation of a 14 mile gas pipeline. 219 N.W.2d at 827. Shortly after the pipeline's completion, the plaintiffs discovered a single "casing short" in the entire pipeline. Id. Two years later, after discovering numerous additional casing shorts, the plaintiff hired an engineering consulting firm who, after inspecting the pipeline, recommended that the plaintiff excavate and repair numerous problems. Id. at 827–28. The plaintiff filed a negligence claim four years later. The defendant argued that the statute of limitations precluded recovery because the plaintiff discovered the injury when it discovered the single casing short. Id. at 829. The Wisconsin Supreme Court rejected the defendant's arguments and held that because "'casing shorts' are a 'usual phenomena' and are often caused not only by the improper installation of a pipeline but may also result from other factors such as water in the pipeline, . . . the discovery of a single casing short, in a relatively new pipeline, is not 'sufficiently significant' to alert the Gas Company to the possibility of major defects throughout the entire 14 mile pipeline." Id. at 830–31. Unlike the circumstances in Wisconsin Natural Gas, however, Naparala experienced problems with "[a]t least 90 percent" of his windows in 2006. Naparala Depo. 57:20–58:1. Therefore,

7

Wisconsin Natural Gas is easily distinguishable, and Naparala's reliance on this case is misplaced.

Pella argues that Milwaukee Area Vocational Tech. & Adult Educ. Dist. v. U.S. Steel Corp., 847 F.2d 435 (7th Cir. 1988), is more applicable under these circumstances. In Milwaukee Area, the plaintiff community college used the defendant's steel during construction of some buildings. Id. at 436. In 1978, the plaintiff discovered rusting and staining of the steel. Id. The court held that the plaintiff "was put on notice of a problem related to the [] steel and its possible connection with [the defendant] more than six years before it filed its complaint" because "[t]he facts in the record establish that [the plaintiff] knew in December, 1978, that there was unusual rusting and staining of the [] steel." Id. at 439. The court held that "[t]hese facts alone were certainly sufficient to put [the plaintiff] on notice that its rights had been violated and that the problem was probably caused by either defective design, defective [] steel supplied by [the defendant], or some combination of defective design and defective steel." Id. (rejecting the plaintiff's subjective determinations for an objective test and stating "the limitations period does not begin to run until there is some notice of the injury and of a causal connection between the injury and the defendant, but once there is such notice, [courts] do[] not allow a party to extend the limitations period by its own protracted elimination of potential defendants").

Pella argues that Naparala discovered the defect by March 2006 when he made his first warranty claim. In response, Naparala contends that the claim accrued in 2014 when he learned about a class action lawsuit. It is undisputed that Naparala noticed excessive moisture problems in all of the rooms of his home every year after the windows

8

were installed. Naparala Depo. 31:7–10 ("Can you indicate the areas of your home that were affected by your experience with the windows? All of them."); Id. at 57:8–58: ("How many of the windows [in December 2006] were experiencing this water damage? At least 90% of them I would say."). Further, it is undisputed that although he initially assumed that the windows were fixed after the 2006 service call, he realized there was still a problem with the windows "when [he] started seeing the water damage due to excessive moisture beginning to occur" every fall, beginning in the fall of 2006. Id. at 65:1–11.

When Naparala noticed excessive moisture in all of the rooms in his house the fall following the 2006 service call, he had possession of essential facts which would, if diligently investigated, disclose the fraud. See John Doe 1, 734 N.W.2d at 844. It is not necessary that Naparala have knowledge of the ultimate facts of fraud. See id. In the exercise of reasonable diligence, Naparala should have discovered that the excessive moisture problems were attributable to the windows when they continued to exhibit problems every single year following installation. At that point, Naparala was put on notice that his rights may have been violated and that the problem was probably caused by a defect in the design or installation of the windows, or a combination thereof.

Therefore, the court finds that Naparala's fraudulent concealment claim accrued in 2006 and expired in 2012, two years prior to filing suit, unless the statute of limitations may be tolled by equitable estoppel.

### B.     Equitable Estoppel

Naparala argues that equitable estoppel tolls the statutes of limitations. Pl.'s Resp. 8. "Equitable estoppel is a court-made doctrine that may be applied when an action

or non-action by the party against whom estoppel is asserted induces reasonable reliance by the other party, to that party's detriment." Stachowiak v. Shawano Cnty. Zoning Bd., 794 N.W.2d 928, at *1 (Wis. Ct. App. 2010). "Equitable estoppel [in the statute of limitations context] suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing." In re Copper Antitrust Litig., 436 F.3d 782, 790 (7th Cir. 2006) (internal citation omitted).

There are six rules to consider in determining the applicability of equitable estoppel: (1) the defendant must have been guilty of fraudulent or inequitable conduct; (2) the aggrieved party must have failed to commence the action within the statutory period because of his or her reliance on the defendant's acts or representations; (3) the acts, promises or representations must have occurred before the expiration of the limitation period; (4) after the inducement for delay has ended, the aggrieved party may not unreasonably delay; (5) the defendant's affirmative conduct may be equivalent to a representation upon which the plaintiff may rely to his or her disadvantage; and (6) actual fraud, technically speaking, does not have to be present. Hester v. Williams, 345 N.W.2d 426, 431 (Wis. 1984) (citing State ex rel. Susedik v. Knutson, 191 N.W.2d 23, 25–26 (Wis. 1971)). The test for whether a party should be estopped from asserting the statute of limitations is "whether the conduct and representations of [the defendant] were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." Johnson v. Johnson, 508 N.W.2d 19, 21 (Wis. Ct. App. 1993) (citations omitted). "Proof of estoppel must be clear, satisfactory and convincing and is not to rest on mere inference or conjecture." Id. at 22.

There is absolutely no evidence on the record of any fraudulent representations or affirmative conduct on which Naparala may have reasonably relied to his disadvantage. The only evidence of a representation is the VerHalen service technician's statement in 2006 that Naparala's windows were not sealed properly. Although Naparala testified that he assumed the excessive moisture issue was fixed, the service technician did not represent that the matter was resolved. Undoubtedly, there is no evidence from which the court could discern that Pella's conduct was "so unfair or misleading" to warrant the commencement of the action after the expiration of the statute of limitations. Johnson, 508 N.W.2d at 21.

Further, "[e]quitable estoppel is appropriate only when a party's reliance on another party's conduct is reasonable." Honeycrest, 557 N.W.2d at 257 (internal citations omitted). It is a question of law whether a party should be estopped from asserting the statute of limitations on the undisputed facts of a case. Id. Naparala testified that he knew there were still problems with the windows when the moisture issue continued in the fall and winter of that same year and every subsequent year. Even if Naparala relied on the service technician's representations in 2006 that the windows were not sealing properly to delay filing suit until 2014, such reliance would not be reasonable because each year, the windows exhibited excessive moisture problems.

Additionally, to the extent any alleged misrepresentations and/or affirmative conduct in 2006 suspended the statute of limitations, the statute of limitations would not have been tolled until 2014 when Naparala filed suit. "Equitable estoppel [in the statute of limitations context] suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing." In re

11

Copper Antitrust Litig., 436 F.3d 782, 790 (7th Cir. 2006) (internal citation omitted) (emphasis added). There is absolutely no evidence on the record that Pella or its representatives did anything between 2006 and 2014, much less evidence that Pella or its representatives took active steps to prevent Naparala from suing between 2006 and 2014. Lastly, to the extent Naparala's claim rests on Pella's denial of the 2013 warranty claim, such conduct occurred outside the statute of limitations and therefore cannot support his claim. See Hester v. Williams, 345 N.W.2d 426, 431 (Wis. 1984) ("The acts, promises or representations must have occurred before the expiration of the limitation period.").

Therefore, the court finds that Naparala did not reasonably rely on any affirmative conduct or representations by Pella or its representatives in failing to file suit until 2014. Naparala's fraudulent concealment claim accrued in the fall of 2006 when he had sufficient facts on which, in the exercise of reasonable diligence, he should have discovered that the windows were defective. As such, the statute of limitations for Naparala's fraudulent concealment claim expired in 2012, two years prior to bringing suit.

Because Naparala's fraudulent concealment claim is barred by the statute of limitations, the court grants Pella's motion for summary judgment and dismisses Naparala's fraudulent concealment claim as barred by the statute of limitations.

### C. Duty to Disclose

Even if the court were to hold that Naparala's fraudulent concealment claim did not accrue until 2014, his claim would be barred because Wisconsin does not recognize a common law duty to disclose in commercial transactions. Under Wisconsin law, "[i]t is well-established that a nondisclosure is not actionable as a misrepresentation tort unless

there is a duty to disclose." Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 238 (Wis. 2004) (citing Ollerman v. O'Rourke Co., Inc., 288 N.W.2d 95 (Wis. 1980)). The general rule in a sales or business transaction is that "silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose." Id. "The existence and scope of a duty to disclose are questions of law for the court." Id. (citing Ollerman, 288 N.W.2d at 95).

The Wisconsin Supreme Court recognized a duty to disclose in a non-commercial real estate transaction in Ollerman, 288 N.W.2d 95. In Tietsworth, the Supreme Court of Wisconsin considered whether there is a duty to disclose in a general commercial transaction, in that case, the sale of a motorcycle. Id. While the court recognized that under Ollerman, there is a duty to disclose in non-commercial real estate transactions, the court stated that it is a more difficult question whether the duty to disclose extends more broadly to sales of consumer goods. Id. at 239 (citing Ollerman). After highlighting the significant policy issues involved, the court declined to decide the issue because the parties did not brief it. Id. Since Tietsworth, no Wisconsin state court has addressed the issue.

Pella argues that the court should not extend the duty disclose to the sale of consumer goods because no Wisconsin court has explicitly decided the issue, and this court should not be the first to do so. Def.'s Mot. 24. In response, Naparala contends that a duty can arise when, as here, the facts are exclusively within the knowledge of one party, and the other party is not in a position to discover the facts for himself. Pl.'s Resp. 10–11. Naparala further argues that Wisconsin courts have recognized a duty to disclose in consumer transactions. Pl.'s Resp. 11–12.

In support of his argument, Naparala cites two cases for the following proposition:

> Typically, a duty to disclose might be found in a cases [sic] in which a seller conceals a defect, prevents investigation, has told a half-truth or made an ambiguous statement, where the seller has a fiduciary duty to the seller or "where the facts are peculiarly and exclusively within the knowledge of one party to the transaction and the other party is not in a position to discover the facts for himself." Ollerman v. O'Rourke Co., Inc., 288 N.W.2d 95 (Wis. 1980). "The crucial element in determining whether a duty of disclosure exists is whether the mistaken party would reasonably expect disclosure." Hennig v. Ahearn, 601 N.W.2d 14, 22 (Wis. Ct. App. 1999).

Fleming Cos., Inc. v. Krist Oil Co., 324 F. Supp. 2d 933, 946 (W.D. Wis. 2004) (finding that the plaintiff was under no obligation to inform the defendant and granting summary judgment on defendant's counterclaim); see also Hennig, 601 N.W.2d at 23 (denying summary judgment on a fraudulent misrepresentation claim for failure to disclose a last-minute alteration during the negotiation of an executive compensation agreement because there was evidence from which a jury could determine the existence of a duty). Naparala argues that because the defect was exclusively within Pella's knowledge and he was not in a position to discover the facts for himself, the court should recognize a duty to disclose. Pl.'s Resp. 11. However, Fleming and Hennig both cited Ollerman and neither case involves a general consumer transaction similar to the sale of windows.

Naparala also cites Schmidt v. Bassett Furniture Indus., 2009 WL 3380354, at *10 (E.D. Wis. Oct. 20, 2009), an unpublished case from the Eastern District of Wisconsin. In Schmidt, the plaintiffs were a class of customers who contracted to purchase furniture and furnishings during a liquidation sale at one of the defendant's authorized dealers. Id. at *1. The plaintiffs alleged that they made down payments but never received the furniture. Id. The plaintiffs sued the defendants for fraud for failure to disclose

14

numerous facts, including "the fact that the liquidation sale was operated like a Ponzi scheme in that orders could only be filled if additional customers made purchases; that the furniture ordered by plaintiffs did not then exist," etc. Id. at *9. The court recognized the law from Tietsworth that it was "an open question in Wisconsin whether the duty to disclose that it had recognized in real estate and business transactions extends more broadly to sales of consumer goods." Id. at *10, n.2. The court denied defendant's motion to dismiss the fraud claim for failure to disclose, noting that "[n]either party offer[ed] any reasons why the same general principles [applied to non-commercial real estate transactions in Ollerman] would not apply to a consumer transaction." Id.

Although the Eastern District of Wisconsin did recognize a duty to disclose in a consumer transaction in Schmidt, the court will not recognize a duty to disclose under these circumstances for the following reasons. First, in Tietsworth, the Wisconsin Supreme Court acknowledged the strong policy considerations involved in resolving the question and refused to decide. Tietsworth, 677 N.W.2d at 239. Second, Schmidt is an unpublished and therefore non-binding opinion in which the court did not analyze the issue but only summarily recognized a duty to disclose, in a footnote, after neither party offered reasons why the court should not apply Ollerman to consumer transactions. Schmidt, 2009 WL 3380354, at *10, n.2. Most importantly "sitting in diversity, a federal court 'should not create or expand [a] State's public policy.'" Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quoting St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995)). "Absent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an

15

uncertain and ephemeral interpretation of state law." Id. (quoting Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992)). Therefore, the court declines to make a policy determination and hold that there is a duty to disclose in a consumer transaction.

Thus, even if the court were to find that Naparala's fraudulent concealment claim is not barred by the statute of limitations, the court grants Pella's motion for summary judgment and dismisses Naparala's fraudulent concealment claim on the merits because Wisconsin does not explicitly recognize a duty to disclose in consumer transactions.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Pella's motion for partial summary judgment and **DISMISSES** Naparala's fraudulent concealment claim, unjust enrichment claim, and breach of express warranty claim to the extent it is based on non-written warranties outside of Pella's limited warranty.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 22, 2015**
**Charleston, South Carolina**