# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| TED NAPARALA, SR., *on behalf of himself and all others similarly situated*, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:14-mn-00001-DCN No. 2:14-cv-03465-DCN |
| vs. | ) ) ) | **ORDER** |
| PELLA CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on plaintiff Ted Naparala, Sr.'s ("plaintiff") motion for class certification. For the reasons set forth below, the court denies plaintiff's motion.

## I.  BACKGROUND

Plaintiff began construction of his Princeton, Wisconsin home in September 2005. Plaintiff purchased defendant Pella Corporation's ("Pella") ProLine and Architect Series windows from a retail store in Wisconsin and, with his son's help, personally installed the windows into his home in November 2005. Pl.'s Mot. Ex. 1, Naparala Depo. 19:24–25, 34:14–16. Plaintiff's windows came with a limited warranty, which required Pella to repair or replace—or refund the purchase price of—any defective windows, if notified of a defect within ten years of the date of sale. Pl.'s Mot. Ex. 20.

In 2006, plaintiff allegedly began observing moisture problems with the windows and contacted Pella. Id. at 61:4–12. Plaintiff made a claim under the window's limited warranty, and on March 23, 2006, an independent distributor of Pella products, VerHalen, Inc., sent a service technician to investigate this claim. Id. at 62:16–20. The technician determined that the windows were not sealing properly and adjusted the cranks

1

so that the windows would crank tighter.  Id.  Plaintiff was not charged for this service visit or any associated labor.  Id.

Plaintiff contends that his windows continued to experience moisture problems in the years following his 2006 warranty claim, but plaintiff did not submit a subsequent claim until December 2013.  Id. at 63:10–14.  On January 27, 2014, a service technician from VerHalen, Inc. again visited plaintiff's home and concluded that the windows were experiencing interior condensation caused by excess humidity, which fell outside of the warranty.  Pl.'s Mot. Ex. 2, Gerdes Expert Disclosure 17.  As such, plaintiff was denied warranty coverage.  Id.

Plaintiff filed this action in the United States District Court for the Eastern District of Wisconsin on May 20, 2014, bringing claims for:  (1) violation of the Wisconsin Deceptive Trade Practices Act; (2) negligence; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of express warranty; (6) fraudulent concealment; (7) unjust enrichment; (8) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (9) declaratory relief.  On August 15, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation.  On May 19, 2015, the court granted in part and denied in part Pella's motion to dismiss, and on December 22, 2015, the court granted Pella's motion for partial summary judgment. As a result of the court's rulings on motions, plaintiff's only remaining claims are for breach of express warranty with respect to the limited warranty and violation of the MMWA.[1]

---

[1] The MMWA claim is derivative of the breach of express warranty claim.  See ECF No. 23, Motion to Dismiss Order 17–18.

2

Plaintiff contends that Pella's Architect Series and Designer Series aluminum-clad casement windows (the "Windows")[2] manufactured from 1997–2007 suffer from a common defect—an "inadequate water management system"—and that this defect is exacerbated by inadequate application of wood preservative to the Windows. See ECF No. 38-1 in Case No. 2:14-cv-3307, Dilly Mot. to Certify Class 2.[3] Plaintiff argues that because all Windows manufactured during the class period inherently contain the aforementioned defect, any attempt to repair such Windows or replace such Windows with other Windows manufactured during the class period was meaningless, because it invariably left the warranty claimant with defective Windows.[4] Pl.'s Mot. 19–20. Thus, plaintiff concludes, the repair and replace remedies available under the limited warranty fail of their essential purpose. Id.

Plaintiff filed the instant motion for class certification on November 9, 2015. Pella filed its response on December 15, 2015. Plaintiff replied on January 19, 2016, and Pella filed a sur-reply on February 9, 2016. The court held a hearing on the matter on February 22, 2016. The motion is now ripe for the court's review.

## II.  STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23(a) provides that one or more members of a class may sue or be sued as representative parties on behalf of all only if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or

---

[2]    The court notes that plaintiff did not own any Designer Series Windows. Plaintiff did own Proline Series Windows, but such windows are not the subject of this action.

[3]    Plaintiff incorporates components of a related motion for class certification in the case of Dilly v. Pella Corporation, 2:14-cv-3307. Pl.'s Mot. 2. Where applicable, the court cites directly to that motion.

[4]    The court expresses no opinion on plaintiff's underlying assumption that the limited warranty extends to design defects.

defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition to the requirements of Rule 23(a), a class must also satisfy the requirements set forth in one of the three sub-parts of Rule 23(b), as follows: (1) individual actions would risk inconsistent adjudications, or adjudications dispositive of non-parties; (2) class-wide injunctive or declaratory relief is sought and appropriate; or (3) legal or factual questions, common to the proposed class members, predominate over questions affecting individual members. See Gunnells v. Healthplan Servs., 348 F.3d 417, 423 (4th Cir. 2003). In addition to these explicit requirements, "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" often referred to as the "ascertainability" requirement. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014).

The plaintiff carries the burden of establishing that each of the requirements for class certification is satisfied. Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004) ("The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied."); Windham v. Am. Brands, Inc., 565 F.2d 59, 65 n.6 (4th Cir. 1977) (en banc) ("It is well settled in this jurisdiction that the proponent of a class certification has the burden of establishing the right to such certification under Rule 23."). Though class certification should not be "conditioned on the merits of the case," the court may "look beyond the pleadings to the extent necessary to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." Clark v. Experian Info. Sols., Inc., 2001 WL 1946329, at *1 (D.S.C. Mar. 19, 2001). Ultimately, the court "has

broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (quoting In re American Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996)).

### III. DISCUSSION

Plaintiff seeks certification of the following class:

> All persons or entities who, as of the Notice Date, are current or former owners of structures in Wisconsin with Pella Architect Series or Pella Designer Series, aluminum-clad casement windows (the "Windows") manufactured from the beginning of 1997 through the end of 2007, and who made a claim under Pella's Limited Warranty. The Windows include fixed and operating casements but exclude awnings, shapes, direct set and specialty products.

Pl.'s Reply 3.[5] Plaintiff seeks to certify the proposed class solely for the purposes of determining whether the Windows are defective. Id. 3–4. If the finder of fact determines that such a defect exists, plaintiff envisions a "second phase whereby individual issues of causation and damages will be litigated on behalf of all class members that submit sufficient documentation." Id. at 4. On the other hand, if plaintiff fails to prove that the Windows are defective, plaintiff contends that the matter would be fully resolved. Id. Under this "trial plan," plaintiff argues that certification is appropriate

---

[5]        Plaintiff narrowed the scope of the proposed class by adding the language "and who made a claim under Pella's Limited Warranty" in his reply. There was some initial question as to whether the class was meant to include individuals who made their warranty claims after 2007. Given that Pella windows are manufactured to order, see Def.'s Resp. 5, it seems fairly clear that proving a defect in Windows manufactured between 1997 and 2007 would in no way advance a failure of essential purpose claim for those individuals whose defective Windows were replaced after 2007. Nevertheless, plaintiff's arguments at the hearing indicate that such individuals are included in the class. See Hr'g Tr. 71:5–8 (citing affidavit showing the number of claims Pella received from Wisconsin locations regarding Windows manufactured between 1997 and 2007, regardless of when claim was made); Hr'g Tr. 155:4–7 ("[W]e think that even past 2007 the wood preservation treatment is not entirely effective. So that still is an issue in this case."); see also Pl.'s Reply Ex. 4, Branda Dec. ¶ 6 (indicating number of warranty claims filed in Wisconsin for windows manufactured between 1997 and 2007).

under Rule 23(b)(3), because the existence of a product defect predominates over all other individual issues. Id. at 12.

At the class trial, plaintiff plans to prove that the Windows are "uniformly defective" since they all have "an inadequate water management design and inadequate wood preservative." Id. at 3. Specifically, plaintiff alleges that, for all Windows: (i) the glazing pocket—i.e. where the glass panel fits into the sash[6]—is not properly sealed due to a lack of sealant adhesion and excessive saturation; (ii) the frame corners have insufficient sealant; and (iii) the gasket between the sash and frame does not adequately prevent water intrusion due to the gasket's excessive compression set— i.e. the permanent deformation in the gasket that remains when a force is removed. Id.; Def.'s Resp. Ex. 14, SGH Report 67–72, 83–85.[7] As to the wood preservative treatment, plaintiff contends both that the treatment chemicals used and the treatment processes applied were insufficient for extended and repeated saturation. Pl.'s Reply 3–4; SGH Report 79–81, 83.

The court analyzes plaintiff's proposed class under each Rule 23 requirement in turn.

### A.    Ascertainability

The implicit requirement of ascertainability demands that the members of the proposed class be readily identifiable by reference to objective criteria. EQT Prod. Co., 764 F.3d at 358. "To be ascertainable, a class must be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a

---

[6]      The window's sash is the component of the window that holds the glass panel and fits inside the window's frame.

[7]      Plaintiff's expert's report is cited in both parties' briefs, but is actually attached as Exhibit 1 to Pella's Daubert brief, ECF No. 129 in 2:14-mn-00001.

6

member.'"  Solo v. Bausch & Lomb Inc., No. 2:06-cv-02716-DCN, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) (quoting Cuming v. S.C. Lottery Comm'n, No. 3:05-cv-03608, 2008 WL 906705, at *1 (D.S.C. Mar. 31, 2008)).  "[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012)).

The parties first dispute the usefulness of Pella's warranty claims database in locating putative class members.  Plaintiff contends that this database would contain the bulk of information necessary to determine class membership, Pl.'s Reply 23, while Pella argues that its database does not provide a way of distinguishing between claims related to plaintiff's proposed defect and unrelated claims.  Def.'s Sur-Reply Ex. 1, Saraf Supp. Dec. ¶¶ 4–7.  However, it is not at all clear why this is relevant, because the proposed class definition includes all warranty claimants, no matter the underlying cause of the warranty claim.[8]  Hr'g Tr. 72:23–73:1 ("THE COURT:  Does your proposed class include every person who made a warranty claim regardless of their – the cause of their warranty claim?  MR. LUCEY:  Yes, sir.").[9]

_____

[8]    Notably, the database information used by the parties to this point appears to have already been restricted to claims filed under thirty-nine "problem codes."  Def.'s Sur-Reply 5 n.4.  Even assuming plaintiff intends to limit the class to these "problem codes"—which is by no means obvious, given the proposed class definition—both parties appear to agree that such a class would include members whose claims had nothing to do with the defect alleged in this case.  See id. (contending that many of the thirty-nine problem codes include claims unrelated to wood deterioration); Hr'g Tr. 73:4–24 (recognizing that claims unrelated to water intrusion are included in the class for "definitional purposes," but that such claims would be unable to prove individual causation).

[9]    Plaintiff does suggest that it is possible to isolate warranty claims on Pella's database relating to the wood deterioration "problem code."  Pl.'s Reply 23.  However, plaintiff also concedes that these problem codes do not precisely trace the defect claims involved in this dispute.  See Hr'g Tr. 73:11–18 (explaining that certain claims coded as "bow warp sag" may truly be caused by the problems with the frame-sash gasket at issue in this case); see also Saraf Supp. Dec. ¶ 7 (indicating that the "wood deterioration" filter most closely represents the alleged product defects and that the results produced by this filter would need to be supplemented by searching the database's "comments" field for references to wood deterioration, rot, etc.).

Once one recognizes the scope of the proposed class, the role of the database information becomes clear.  Plaintiff would utilize the database to identify owners of Windows manufactured between 1997 and 2007 who made any sort of warranty claim. Because the database leaves out denied claims, plaintiff proposes to locate additional class members by subpoenaing authorized dealer records—which might contain information on denials—and through publication.  Hr'g Tr. 71:20–72:1.  Plaintiff suggests that potential class members who are not identified through Pella's database and dealer records could be confirmed by examining records retained by the class members themselves, or, as a last resort, through examination of the windows.  Pl.'s Reply 24.

While the breadth of the class definition underpinning this methodology may present its own issues, ascertainability is not one of them.  Every warranty claimant identified by the database would necessarily be included in the class.  This inquiry is straightforward enough.  Problems may certainly arise in locating certain denied claimants,[10] but these problems can be mitigated by the use of the dealer records and publication of notice.  The court approved of this basic approach in the Saltzman v. Pella Corp. case dealing with Pella's ProLine windows.  257 F.R.D. 471, 476 (N.D. Ill. 2009), aff'd, 606 F.3d 391 (7th Cir. 2010) ("Where Pella's records may be insufficient, provision of notice can supplement class identification efforts.").  Such alternative measures are likely to operate both objectively and manageably, as both effectively seek to find alternative sources of documentation evincing an individual's class membership. Only in very specific circumstances would the court be faced with anything resembling a

---

[10]    The Saraf Expert Report indicates that Pella does have access to denial data from 2010 to 2014.  See Def.'s Resp. Ex. 6.  Because plaintiff's class includes all warranty claims regarding Windows manufactured from 1997 to 2007, regardless of when the claim was made, this data could help locate some of the denied claimants.

"mini-trial."  For instance, if a purported class member were denied warranty coverage, and both Pella and the authorized dealer discarded any relevant documentation, and the purported class member discarded their own documentation, then it may be necessary to conduct an examination of the actual windows at issue.  Notably, even in these circumstances, the manufacturer and likely vintage of the windows can be determined by looking at a sticker on the IGU.  Pl.'s Mot. Ex. 13.  This leaves the design of the window and the existence of a warranty claim as the only issues even susceptible to the risk of a "mini-trial."  Given the number of contingencies required to realize that risk, the court finds that it does not present a true threat to the proposed class's ascertainability.[11]

### B.    Numerosity

To satisfy the "numerosity" requirement, a plaintiff must show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No specific number of claimants is necessary . . . , and there is no mechanical test that the [c]ourt can use when determining whether numerosity exists."  Ganesh, L.L.C. v. Computer Learning Centers, Inc., 183 F.R.D. 487, 489 (E.D. Va. 1998) (citing Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967); Kelley v. Norfolk & W. Ry. Co., 584 F.2d 34, 35 (4th Cir. 1978)).

Again, the breadth of plaintiff's proposed class, incongruous as it may be to plaintiff's claim, easily satisfies the numerosity requirement.  Courts have found the numerosity requirement satisfied with as few as 40 persons.  See Ganesh, L.L.C., 183 F.R.D. at 489 (citing Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972)).

---

[11]    Notably, Pella's own argument that "the vast majority who made claims had them accepted and received warranty service" further suggests that this risk would be exceedingly low.  Def.'s Resp. 35.  However, the evidence supporting this contention is subject to a separate motion to exclude, ECF No. 120 in 2:14-mn-00001, and as such, the court does not rely on it in deciding the instant motion.

Here, Pella's claims database indicates that 1,934 warranty claims were filed in Wisconsin for Windows manufactured between 1997 and 2007. Pl.'s Reply Ex. 4, Branda Dec. ¶ 6b. That number is likely to grow since the database does not account for denied claimants. Therefore, the court has little difficulty finding that the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### C.    Commonality

Federal Rule of Civil Procedure 23(a)(2) requires plaintiffs seeking to represent a class to show that "there are questions of law or fact common to the class." A showing of commonality does not simply entail raising common questions but a showing that "the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)). "Th[e] language [of Rule 23(a)(2)] is easy to misread, since [a]ny competently crafted class complaint literally raises common 'questions.'" Id. (internal citations omitted). The class members claims "must depend upon a common contention[,]" which "must be of such a nature that is capable of classwide resolution." Id. This requires that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. The commonality test is "qualitative" not "quantitative." See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 429 (4th Cir. 2003) (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996)). "Quantitatively, almost by definition there will always be more individual [] issues than common liability issues . . . . Qualitatively, however, . . . liability issues . . . [may] . . . far exceed in complexity the more mundane individual [] issues." Id. at 429 (quoting In re Honda Motor Co., 979 F. Supp. 365, 367 (D. Md. 1997)).

Here, an essential element of plaintiff's breach of warranty theory is that the Windows manufactured during the class period were defective. Pl.'s Mot. 11; Pl.'s Reply 2. Plaintiff argues this defect issue can be resolved through common proof that the Windows "suffer from an inadequate water management system and [an] inadequate wood preservation system." Pl.'s Mot. 11–12. Pella argues that the question of whether the "water management system" was defective cannot be answered through common proof, because: (i) the Windows do not even share a common design; and (ii) this "system," as alleged by plaintiff's experts, does not constitute a single defect but a number of different defects. Def.'s Resp. 27–30.

Pella disputes plaintiff's contention that the Windows share a common design by outlining the numerous design changes made during the class period. See id. Ex. 2. When these changes are considered, Pella argues, the Windows manufactured during the class period actually span fifteen unique designs. Id. In response, plaintiff cites In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig., 722 F.3d 838, 847 (6th Cir. 2013) for the proposition that design differences do not defeat commonality if they have no material effect on the alleged defect. Pl.'s Reply 9–10. The plaintiffs in Whirlpool brought class claims based on an alleged defect in washing machines manufactured by the defendant. In re Whirlpool Corp., 722 F.3d at 854. The defendant argued that class certification was inappropriate because the allegations involved two different washing machine designs, both of which were altered over the years, resulting in over twenty-one variations. Id. The Sixth Circuit determined that these variations had no effect on the issue of commonality, because the plaintiffs had presented evidence that "the two [designs] are nearly identical, the design issues concerned various models, and most of

the differences in models were related to aesthetics, not design." Id.; see also Barden v.

Hurd Millwork Co., Inc., 249 F.R.D. 316, 321 (E.D. Wis. 2008) (finding that class

certification was warranted, despite the fact that the class implicated over seventy types

of glass products, where the court recognized the products were "similar" and plaintiff

alleged that all such products failed in the same way).

Thus, the true question is not whether the class definition includes different

Window designs, but rather, whether these design variations had any impact on the

Window's vulnerability to water intrusion. As set forth below, the court ultimately finds

that class certification is inappropriate in this case, regardless of how this question is

answered. Therefore, the resolution of this dispute must await another day.[12] At this

point, it is sufficient to assume that any design variations do not bar certification, because

the alleged deficiencies were common to all Windows manufactured during the class

period.

Turning to Pella's second objection, plaintiff's expert identified three "failure

paths" in the Windows that lead to water intrusion, and consequently, wood deterioration:

(i) water penetrating the glazing pocket; (ii) water penetrating the frame corners; and

(iii) water penetrating the frame gasket. Dilly Mot. to Certify Class 2–3. Each failure

path was caused by a different deficiency in the Windows' design. Id. at 3; SGH Report

67. In fact, it appears that water penetration in the frame corners is attributable to two

separate deficiencies, a failure to inject butyl sealant into certain areas of the frame and

---

[12]      The court notes that a number of Daubert challenges are currently pending, which the parties have
agreed to address after class certification. If this design variation issue reemerges, it may be more easily
resolved once these Daubert challenges have been decided.
          The court further notes that resolution of these Daubert challenges would have no effect on the
class certification analysis in this decision, because the court finds class certification inappropriate in light
of the structure of plaintiff's claim and the nature of the inquiries required to resolve it. The court does not
base its conclusion on the veracity of any particular assertion made by the parties' experts, but instead
looks to the nature and scope of the arguments those assertions are intended to support.

the use of incompatible sealants.  SGH Report 72.  Moreover, plaintiff attributes water

penetration in the glazing pocket to deficiencies in a different sealant.  See SGH Report at

81 (referring to "glazing seals"); Def.'s Resp. Ex. 1 at 5 (showing different sealants used

for sash and frame).  Plaintiff also contends that Pella placed too much reliance on the

use of wood preservatives to prevent deterioration, that Pella's use of such preservatives

did not comply with "basic consensus standards," and that Pella "deviated from

manufacturer instructions and specifications."  Dilly Mot. to Certify Class 5–6; SGH

Report 72–82.

   Though plaintiff characterizes his claim as alleging a single defect in the

Windows' "water management system," the court finds that the "failure paths" identified

in the "water management system" are, in reality, allegations of distinct defects in

different parts of the Windows.[13]  A product defect exists by virtue of the fact that it

causes some sort of harm, either to the product itself, or to persons or property beyond the

product.  See DEFECT, Black's Law Dictionary (10th ed. 2014) ("An imperfection or

shortcoming, esp. in a part that is essential to the operation or safety of a product.").

Thus, the basic concept of a defect is tied up with a causal link between some aspect of a

product and the harm it creates.  In this case, the evidence indicates that each "failure

path" functions independently.  Plaintiff's own expert suggests that each path fails at

---

[13]     Perhaps plaintiff truly intends to pursue a single, "system-wide" defect theory that leaves open the question of whether each "failure path" is an individual defect and only asks whether they create a defect in combination.  It would seem that this theory implicitly asks whether each "failure path" constitutes a defect; but assuming it does not, such a theory is not consistent with plaintiff's assertion that Pella stands to gain the benefit of meaningful issue preclusion if it prevails at a class trial.  See Hr'g Tr. 69:24–70:2 ("[Pella] would get issue of preemption [sic] if they prevail that these windows do not have a design defect that permits water intrusion and premature wood degradation.").  If the class trial somehow never asks whether each "failure path" constitutes a defect, then those questions will obviously remain un-litigated, and thus, unaffected by issue preclusion.  Thus, for plaintiff's issue preclusion argument to hold, the court must construe plaintiff's defect argument to allege multiple defects.  Otherwise, the court would have to recognize that class certification offers Pella very little in the way of issue preclusion.

different rates.  See SGH Report 54 (indicating glazing pocket leaks at 8% rate, frame

corners leak at 15% rate, and sash-frame gasket leaks at 61% rate).  Moreover, each

"failure path" allegedly permits water intrusion into the different parts of the Windows.

See SGH Report Figures 28–30 (diagraming different water intrusion related to the frame

gasket and glazing pocket failure paths).

   The most that can be said is that each failure path results in water intrusion—i.e.,

each causes the same type of damage—but this does not mean that they all constitute one

defect.  Otherwise, any number of seemingly distinct components could be grouped as

part of a single "system," simply because they all lead to the same result.  For instance, a

faulty ball joint and a faulty set of lug nuts may each cause the wheel to fall off of a

vehicle, but few would argue that these problems constitute a single defect.  Defects

come into being by virtue of a causal relationship, and according to plaintiff's own

allegations, each "failure path" has its own causal relationship with water intrusion.

   Under certain theories of liability, this revelation may not impact commonality,

since each class member's Windows contained the same alleged defects.  However,

because of the peculiar nature of plaintiff's breach of express warranty claim, each class

member will need to prove much more than the existence of a particular defect.  A

Wisconsin breach of warranty claim requires that the warranty actually be breached.  Ball

v. Sony Elecs. Inc., 2005 WL 2406145, at *6 (W.D. Wis. Sept. 28, 2005) (explaining that

breach of warranty did not accrue where, despite existence of defect, where plaintiffs

failed to allege that "defendant breached its promise").  The Pella limited warranty

requires claimants to notify Pella "of a defect" within the warranty period.  Pl.'s Mot. Ex.

20 (emphasis added).  Pella cannot be said to have breached the terms of its warranty, at

least for the purposes of plaintiff's claim, unless it received such notice.  Id.  Thus, even assuming the limited warranty failed of its essential purpose every time Pella's repair or replace obligations arose, each class member will still need to show that their initial warranty claim was premised on a defect, and not some other problem, to establish that Pella's obligations were actually triggered.

This requirement, especially when considered in conjunction with the plaintiff's multiple defect allegations, sharply undermines the practical significance of the common issue in this case.  Consider two hypothetical class members:  the first makes an initial warranty claim based on problems that were attributable to leaks in the frame corner, and the second makes an initial warranty claim based on leaks in the sash-frame gasket.  If it is proven that the frame corner is defective but the sash-frame gasket is not, then only the first class member has a viable claim because he is only class member who notified Pella of a defect in accordance with the limited warranty.  Whatever the outcome of plaintiff's proposed class trial, the court will need to make individual determinations as to the underlying cause of each class member's warranty claim.  Plaintiff's multiple defect theory amplifies the risk that this analysis will result in different answers for all different class members.  Moreover, this causal analysis does not necessarily establish causation of damages because many class members will have made warranty claims that were actually accepted.  In these cases, it will be necessary to conduct an additional individualized inquiry to determine whether the class member's damages were also caused by a defect.

At most, determining which "failure paths" constitute actual defects can serve two purposes in this litigation:  (i) it can establish which class members claims can go forward after determining the underlying cause of their individual warranty claims; and

(ii) it can establish that Pella failed to meet its warranty obligations in each case where it repaired a class member's Windows or replaced such Windows with other Windows manufactured during the class period.  However, this second purpose is not common to all class members, since the class inexplicably includes warranty claimants who received replacement Windows that were manufactured <u>after</u> 2007.  <u>See</u> Hr'g Tr. 71:5–8 (citing affidavit showing the number of claims Pella received from Wisconsin relating to Windows manufactured between 1997 and 2007); Hr'g Tr. 155:4–7 ("[W]e think that even past 2007 the wood preservation treatment is not entirely effective.  So that still is an issue in this case.").  Because plaintiff's defect allegations only relate to Windows manufactured before 2007, <u>see</u> Dilly Mot. to Certify Class 2 ("Pella Architect and Designer Casement Windows manufactured from 1997-2007[] suffer from a common defect."), a class trial is especially unhelpful to these class members, as they would still need to prove the existence of defects in their replacement Windows.  Thus, the first purpose outlined above is the only true "common issue."

Though the court recognizes "there need be only a single issue common to the class," <u>Soutter v. Equifax Info. Servs., LLC</u>, 307 F.R.D. 183, 199 (E.D. Va. 2015), it also has some doubt as to whether the single issue presented in this case is so "central" to the resolution of the class members' claims that it warrants class certification.  <u>See</u> <u>Wal-Mart Stores</u>, 131 S. Ct. at 2551.  Nevertheless, the court believes these "centrality" concerns are more squarely addressed under the rubric of Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Because the court ultimately finds that plaintiff has failed to show that the proposed class

meets such requirements, there is no need to decide whether these failures also preclude a

finding of commonality under Rule 23(a).  In this case, the crucial takeaway of the

commonality analysis is that the only common issue is decidedly narrow.  Determining

whether the Windows manufactured during the class period contained any of the alleged

defects is only establishes which particular "failure paths" a class member must prove

caused them to file a warranty claim.

### D.     Typicality

Typicality requires that the "class representative [] be part of the class and possess

the same interest and suffer the same injury as the class members."  Lienhart, 255 F.3d at

146 (quoting Falcon, 457 U.S. at 156).  The Fourth Circuit has stated that the

requirements of commonality, typicality, and adequacy "tend to merge, with

commonality and typicality serv[ing] as guideposts for determining whether . . .

maintenance of a class action is economical and whether the named plaintiff's claim and

the class claims are so interrelated that the interests of the class members will be fairly

and adequately protected in their absence."  Id. (quoting Broussard v. Meineke Discount

Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998)) (alteration in original) (internal

quotation marks omitted).  "The premise of the typicality requirement is simply stated:

as goes the claim of the named plaintiff, so go the claims of the class."  Broussard, 155

F.3d at 340 (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998)).

Many of Pella's challenges to plaintiff's typicality argument deal with individualized issues of causation, damages, and Pella's affirmative defenses.[14]  Def.'s Resp. 32–35 (noting that plaintiff experienced condensation, not water infiltration; noting the need for different damage models for former owners and indirect owners; and noting different notice requirements in different versions of the limited warranty).  These challenges highlight the same basic problem addressed above in the commonality analysis:  the common issue in this case is so limited that the result of a class trial may have very little bearing on a given class member's ability to recover.  However, by their very nature, these challenges do not strike at the common defect issue.

Because the court assumes that the alleged failure paths remained effectively unchanged during the class period, the court also assumes that plaintiff's Windows are comparable to other Windows purchased during the class period.  Thus, plaintiff's claim is clearly typical with regard to the narrow defect issue.  However, the court again stresses that, even under this assumption, plaintiff has failed to demonstrate typicality beyond this narrow issue.

### E.    Adequate Class Representative

"In order for class certification to issue, the Plaintiffs also have the burden of demonstrating that they will fairly and adequately protect the interests of every putative claimant.  This requirement asks whether the Plaintiffs are competent to undertake the case and whether they have interests that are antagonistic to other class members."  Ganesh, L.L.C., 183 F.R.D. at 490.  "For a conflict of interest to prevent plaintiffs from meeting the requirement of Rule 23(a), that conflict 'must be fundamental.  It must go to

---

[14]    Pella's argument that most class members have not been injured because their Windows have not manifested a defect was mooted by the revised class definition offered in plaintiff's reply, which limits the class to those who have made warranty claims.

the heart of the litigation.'" <u>Gunnells</u>, 348 F.3d at 430–31 (quoting 6 Alba Conte &

Herbert B. Newberg, <u>Newberg on Class Actions</u> § 18:14 (4th ed. 2002)).

    Pella's initial arguments on this issue were largely mooted by the restricted class

definition in plaintiff's reply. <u>See</u> Def.'s Resp. 36 (arguing that, because plaintiff has

already been injured by the alleged defect, his motivation for generous immediate

payouts might conflict with the interests of Window purchasers who have not yet

suffered any injury); Pl.'s Reply 3 (limiting class to persons who have already made

warranty claims). Beyond this issue, the adequacy inquiry simply merges with

commonality and typicality. <u>See</u> <u>Lienhart</u>, 255 F.3d at 146. Therefore, the court finds

that plaintiff is an adequate class representative for the narrow purposes of determining

whether the Windows are defective.[15]

## F.    Rule 23(b)(3)

### 1.    Predominance

    Plaintiff seeks certification under Rule 23(b)(3), which empowers the court to

certify a class when "the questions of law or fact common to class members predominate

over any questions affecting only individual members," and "a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>

<u>Prods. v. Windsor</u>, 521 US. 591, 623 (1997). The predominance requirement is "far more

---

[15]    While the court is somewhat troubled by the possibility of conflicts of interest between class members whose damages were caused by water intrusion through different failure paths, neither party thoroughly addressed this issue in its briefing. Therefore, because the issue has not been squarely addressed and because it is not dispositive of the outcome, the court declines to offer any opinion on how it would impact the Rule 23 analysis at this time. Should the question of class certification persist in this litigation, the court reserves the right to address this issue in the future.

stringent than the commonality requirement of Rule 23(a)." <u>Lott v. Westinghouse</u>

<u>Savannah River Co.</u>, 200 F.R.D. 539, 563 (D.S.C. 2000) (citing <u>Amchem Prods.</u>, 521

U.S. at 623–24). Where the factual or legal issues common to all class members are

outweighed by the number and significance of uncommon, individual issues, Rule

23(b)(3) is not satisfied. <u>Amchem Prods.</u>, 521 U.S. at 624. In weighing common issues

against individual issues, "[t]he paramount concern for the court is not merely the number

of individual inquiries that may be required, but rather whether the nature of the

individual inquiries involved is so complex as to outweigh the nature of the common

issues sought to be resolved by class treatment." <u>Brooks v. GAF Materials Corp.</u>, No.

8:11-cv-00983, 2012 WL 5195982, at *8 (D.S.C. Oct. 19, 2012).

    As noted above in section III.C., this case presents a number of individual

inquiries, particularly with respect to causation. First, it must be recognized that the

scope of "causation" issues presented by plaintiff's claim is not limited to determining

the cause of each class member's damages. While this task will certainly require its own

set of individualized inquiries, each class member will also need to show that they

satisfied the notice requirement under Pella's limited warranty, which will require

individualized inquiries into the cause of whatever problems led to each warranty claim.

These inquiries might merge where a warranty claim was denied, but are likely to be

separate where a class member actually received repairs or replacement Windows—at

least to the extent that the damages occurred after said repair or replacement. Moreover,

these causal inquiries are likely to be very fact intensive, as it will be necessary to

differentiate what damage was caused by defective "failure paths" and damage was

caused by independent factors, such as improper installation, condensation, or even other

"failure paths" that are not deemed defective. Differentiating defect-related damage from non-defect-related damage is already a highly disputed issue in this litigation. See Def.'s Resp. 10–14. The need to prove notice of a defect and the possibility that some failure paths might be deemed non-defective will only exacerbate the problems posed by these individual inquiries on a class-wide basis.

Pella is also likely to have affirmative defenses available against many class members, especially with regards to the statute of limitations. Assuming the limited warranty is read to extend to future performance, each class member's breach of warranty claim will have accrued at the point when the breach is or should have been discovered. Wis. Stat. § 402.725(2). This is likely to require individual determinations of when particular class members realized that Pella failed to repair or replace their defective Windows. To the extent class members seek to avail themselves of equitable tolling, it will be necessary to determine whether such class members: (i) relied on Pella's fraudulent actions or representations, and (ii) did not unreasonably delay filing suit after discovering the true facts. ECF No. 23, Order on Mot. to Dismiss at 15–16. The court has already become familiar with the fact-intensive analysis required to resolve such questions, both in this case and in related actions in this multidistrict litigation. See Order of Partial Summ. J. 11 (analyzing evidence, or lack thereof, of Pella's fraudulent representations and plaintiff's knowledge of Window's problems); see also ECF No. 44 in 2:14-cv-3307, Dilly Order of Summ. J. 34–35 (assessing whether plaintiff's knowledge of the facts was sufficient to place him under duty to make inquiry into basis of his claims under Nebraska doctrine of equitable estoppel).

Plaintiff cites a number of product liability cases holding that establishing a common defect constitutes a predominant issue warranting class certification. Pl.'s Reply 6. However, these cases are distinguishable from the case at hand for a variety of reasons. Three of the cases—Chamberlan v. Ford Motor Co., 402 F.3d 952 (9th Cir. 2005),[16] Dafflin v. Ford Motor Co., 458 F.3d 549 (6th Cir. 2006), and Thomas v. Louisiana-Pacific Corp., 246 F.R.D. 505 (D.S.C. 2007)—dealt with claims based on the defendants' delivery or marketing of defective goods. Chamberlan v. Ford Motor Co., 223 F.R.D. 524, 525 (N.D. Cal. 2004) (seeking recovery under California Consumer Legal Remedies Act ("CLRA") for defendant's "failure to disclose the defective nature of the plastic intake manifolds"); Dafflin, 402 F.3d at 554 ("The class members' claims do not differ based on whether there has been actual accelerator sticking because they all allege that Ford delivered a good that did not conform to Ford's written warranty."); Thomas, 246 F.R.D. at (explaining that individual issues of maintenance and installation did not affect predominance where liability was premised on sale of products that were "substantially likely to fail during [their] useful life") Here, plaintiff's claim focuses on Pella's failure to repair and replace the Windows, not the initial purchase of the Windows.[17] Pl.'s Reply 24–25. ("Common evidence will show, on behalf of the entire class, that Pella's Limited Warranty failed in its essential purpose because, due to the inherent defect, Pella is unable to restore class windows to a non-defective condition."). The difference is significant because the damage resulting from the delivery of a defective product is simply the loss of value attributable to the defect, which can be

---

[16]    Notably the Ninth Circuit's opinion in Chamberlan primarily discussed the propriety of appellate review under Rule 23(f) and the level of class certification analysis required at the district court level.

[17]    If plaintiff's breach of express warranty claim was targeted at the delivery of defective Windows, there would be no reason to limit the class to Window owners who actually made warranty claims. The Dafflin class contained no such limitation. Dafflin, 458 F.3d at 551.

established by simply proving the product was delivered.  See Dafflin, 458 F.3d at 554

(noting "the difference in value between conforming and non-conforming goods is better

litigated in a class-wide context").  Thus, the Chamberlan, Dafflin, and Thomas courts

were not faced with the complex causation issues present here.  The Sixth Circuit even

recognized that Dafflin was not "a case [] in which different class members were exposed

to different products such that the uncommon issue of causation predominated over the

lesser shared issues."  Id. at 554.  Instead, the court explained, "[t]his is a case in which,

assuming the throttle body is the same in every car, class members all have the same

express warranty claim."  Id. at 554.  While the instant case does not involve "different

products," it does involve damage arising from different sources, and for the reasons

described above, this variation is likely to require a number of individual inquiries.

 Plaintiff also cites In re Zurn Pex Plumbing Products Liab. Litig., 644 F.3d 604

(8th Cir. 2011), and Helmer v. Goodyear Tire & Rubber Co., 2014 WL 1133299, at *9

(D. Colo. Mar. 21, 2014), which both addressed whether individual causation inquiries

rendered class certification inappropriate.  As an initial matter, it appears that neither case

faced the scope and extent of causation inquiries presented by plaintiff's breach of

express warranty claim.  Though the Helmer plaintiff did claim that the product contained

more than one defect, Helmer, 2014 WL 1133299, at *1, there is no indication that the

Helmer plaintiff's claims implicated multiple causal analyses of the sort presented here,[18]

and if they did, the Helmer court certainly did not consider the issue.

 More importantly, both Zurn and Helmer ultimately discounted the need for

individual inquiries into causal alternatives—such as improper installation or

environmental factors—because they found that the evidence simply did not support

---

[18]  Helmer involved allegations of strict products liability.  Helmer, 2014 WL 1133299, *2.

those concerns.  Zurn, 644 F.3d at 619 (recognizing that "[w]hile the existence of

individual defenses may be important in a court's decision to certify a class," the district

court properly considered defendant's individual defense arguments against plaintiffs'

argument that such defenses lacked "sufficient evidence"); Helmer, 2014 WL 1133299,

at *9 (concluding that "the facts do not suggest that individual questions would

predominate").  In contrast, the evidence in this case suggests that installation,

condensation, and other individual conditions are likely to be important inquiries in

deciding individual class members' claims.  Def.'s Resp. Ex. 18 (American Society for

Testing and Materials standards for installation of windows, stating that "[i]nstallation of

fenestration units can significantly influence in-service performance"); Def.'s Resp. Ex.

19 (American Architectural Manufacturers Association standards for installing windows,

stating that "effectiveness and durability of installed units depend not only on the choice

and quality of materials, design, adequacy of assembly, and support system, but also on

their proper installation"); Def.'s Resp. Ex. 20 at 18–21 (American Society for Testing

and Materials standards for evaluating water leakage through windows, detailing need to

evaluate numerous potential causes); Def.'s Resp. Ex. 23 (U.S. Department of Energy

Report explaining common condensation issues and noting that "[l]eft unchecked,

condensation can damage window frames, sills, and interior shades").

There is no question that individual inquiries into causation and affirmative

defenses may preclude class certification.  See Lienhart, 255 F.3d at 149 (holding that

need for "individualized proof of damage causation" destroyed predominance);

Broussard, 155 F.3d at 342–43 (recognizing that "when the defendant's affirmative

defenses [] may depend on facts peculiar to each plaintiff's case, class certification is

erroneous" and where "each putative class member's claim for [] damages was inherently individualized," they were "not easily amenable to class treatment"). A number of courts have found such inquiries to preclude class certification, despite the existence of a common defect issue. See, e.g., Haley v. Kolbe & Kolbe Millwork Co., 2015 WL 9255571, at *11–13, *16 (W.D. Wis. Dec. 18, 2015) (plaintiffs alleging breach of warranty claims regarding defective windows failed to satisfy predominance due to various individual inquiries, including those implicated by statute of limitations and causation issues); City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 636 (S.D. Fla. 2010) (plaintiffs bringing claims based on defective pipes failed to satisfy predominance in light of "individual issues going to liability and damages"); Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 75 (E.D.N.C. 2008) (plaintiffs bringing claims based on defective farm equipment failed to satisfy predominance where causation issues and affirmative defenses would dominate most every class member's case, "even assuming that [plaintiffs] were able to prove that the [equipment was] defective").

The Eleventh Circuit's recent decision in Brown v. Electrolux Home Products, Inc., 2016 WL 1085517 (11th Cir. Mar. 21, 2016), is instructive. In Brown, the Eleventh Circuit reversed the district court's decision to certify a class of washing machine purchasers bringing breach of warranty and other claims against the manufacturer.[19] The court found that the district court failed to consider certain state-law issues which could require individual proof. Id. at *8. Notably, these issues included a pre-suit notice

_____

[19] The district court's decision in Terrill v. Electrolux Home Products, Inc., 295 F.R.D. 671, 686 (S.D. Ga. 2013), is another case plaintiff cited for the proposition that predominance is satisfied by the existence of a common defect issue.

requirement not unlike the notice of defect requirement in this case.[20]  Id.  The court went on to explain that while the defendant's individual defenses and the need to conduct individual damage inquiries did not necessarily defeat predominance, they did warrant consideration.  See id. at *9–11 (stating that where individual damages "are accompanied by significant individualized questions going to liability" or where "affirmative defenses [] apply to the vast majority of class members and raise complex, individual questions," predominance may not exist) (internal quotation marks omitted).  As explained above, all of these considerations are relevant to this case.

The Farrar case provides further support.  Farrar, 254 F.R.D. 68.  In Farrar, the plaintiff brought negligence, breach of warranty, and unfair trade practices claims against the manufacturer of allegedly defective farm equipment.  Id. at 70–71.  The plaintiff moved for class certification, highlighting the common question of a class-wide defect.  Id. at 72.  Noting that each of the plaintiff's claims required proof of causation and that the equipment in question could fail for a number of different reasons, the court found that:

> Even assuming that named plaintiffs ultimately prove that the bags are defective, defendant will almost certainly bring at least one causation challenge (and likely many causation challenges) against each global class member. It is these individual causation questions—and not the common issues—that would be the predominating issues in the case were the court to grant global class certification.

Id.  On top of this, the court found that the need to address various affirmative defenses—including statute of limitations defenses—provided an independent bar to class certification.  See id. at 75 ("[E]ven if the court agreed with [] plaintiffs that common

---

[20]        The court also noted that individual causation issues precluded certification of the plaintiffs' consumer claims.  Brown, 2016 WL 1085517, at *6–7.  Though the specific issues present in the Brown case are not present here, the court at least upheld the proposition that individual causal inquiries are sufficient to defeat predominance.  Id.

questions would predominate over the individual causation questions, . . . plaintiffs have not shown that common questions would predominate over the individual affirmative defenses . . . .").  The breach of express warranty claim in this case, like the claims at issue in <u>Farrar</u>, will likely require numerous individualized inquiries into causation and affirmative defenses.  Thus, the court has little trouble finding that, when plaintiff's claim is considered as a whole, individual issues predominate over the common defect issue.

        In the instant case, plaintiff does not seek certification as to the entire claim. Instead, plaintiff seeks certification with respect to a single issue under Rule 23(c)(4): the existence of a defect.[21]  Pl.'s Reply 31–32.  There is some dispute over how the court must apply the predominance test when faced with a request to certify as to a specific issue.  <u>Compare</u> <u>In re Nassau Cty. Strip Search Cases</u>, 461 F.3d 219, 225 (2d Cir. 2006) ("[A] court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement.") <u>with</u> <u>Castano v. Am. Tobacco Co.</u>, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4).  The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial.").  However, the emerging majority and two recent decisions by courts in this circuit have found that a court "may use Rule 23(c)(4) to certify a class as to an issue

---

[21]        Plaintiff describes his request for Rule 23(c)(4) certification as an "alternative" to certification under Rule 23(b)(3).  Pl.'s Mot. 7.  However, Rule 23(c)(4) classes are not exempt from the requirements of Rule 23(a) or 23(b), though such requirements may apply differently.  Thus, it is not entirely clear what plaintiff seeks as an alternative to Rule 23(c)(4) certification.  The court discussed this question at the hearing and is satisfied that analysis of the proposed class under Rule 23(c)(4) is sufficient to address all issues relevant to the instant motion. Hr'g Tr. 128:13–17 ("THE COURT: Your 24(c) class issue is the same as the issue in the other class, right?  MR. LUCEY: Yes, sir.  THE COURT: Exactly the same.  MR. LUCEY: Yes, sir. Thank you.").

regardless of whether the claim as a whole satisfies the predominance test in Rule

23(b)(3)."  See Parker v. Asbestos Processing, LLC, No. 0:11-cv-01800, 2015 WL

127930, at *11 (D.S.C. Jan. 8, 2015) (noting that the Second, Seventh, and Ninth Circuits

had all adopted the same approach and finding that Fourth Circuit case law appeared to

follow this approach as well); Good v. Am. Water Works Co., Inc., 310 F.R.D. 274, 298

(S.D.W. Va. 2015) (adopting the same approach and finding that "[t]he weight of

authority [] runs counter to [] Castano.").

     The court will assume that this more permissive approach is correct, as it appears

to have more support and better serves the purposes of Rule 23 by providing courts with

greater flexibility to manage potential class actions.  See Parker, 2015 WL 127930, at *5

("[D]istrict courts should 'give Rule 23 a liberal rather than a restrictive construction,

adopting a standard of flexibility in application which will in the particular case best

serve the ends of justice for the affected parties and . . . promote judicial efficiency.'"

(quoting Gunnells, 348 F.3d at 424)).  However, the court does not need to make an

explicit finding on the issue, as it has no effect on the ultimate result.

     When this approach is applied, the predominance requirement is almost

automatically satisfied.  See id. at *12 ("Naturally, when a court chooses to limit class

certification only to certain common issues under Rule 23(c)(4), those issues presumably

predominate and seemingly satisfy the first element of Rule 23(b)(3).").  Though the

Parker court recognized a possibility that individualized sub-issues might predominate

within the common issue, nothing of the sort is present here.  Id.  All putative class

members made warranty claims for Windows which contained the same basic "failure

paths."  Whether these failure paths were or were not "defects" is not simply the

predominant question addressed under Rule 23(c)(4), it is the only question.  Thus, Rule

23(c)(4) allows plaintiff to escape the horde of causation issues, affirmative defenses, and

damages inquiries that would destroy predominance if the claim were considered as a

whole.  But this evasion is only temporary.

### 2.    Superiority

As Rule 23(c)(4) eases the demands of the predominance requirement, it shifts the

focus to Rule 23(b)(3)'s second requirement, superiority.

> As the common issues are narrowed down to make them sufficiently
> "common," the desirability of issue certification is diminished
> because . . . the relatively simple threshold issues can quickly be disposed
> of in individual trials.  This means that the superiority component of Rule
> 23(b)(3) frequently comes into play to defeat issue certification.

Id. at *15.

"A determination of superiority necessarily depends greatly on the circumstances

surrounding each case."  Stillmock v. Weis Markets, Inc., 385 F. App'x 267, 274 (4th

Cir. 2010) (quoting § 1779 Class Actions in Which Common Questions Predominate

Over Individual Questions—Class Action Must Be Superior to Other Available Methods,

7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed.)).  The ultimate goal of the superiority

inquiry is to ascertain whether "the objectives of the class-action procedure really will be

achieved in the particular case."  Id. (quoting § 1779 Class Actions in Which Common

Questions Predominate Over Individual Questions—Class Action Must Be Superior to

Other Available Methods, 7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed.)).  Rule 23(b)(3)

provides a list of relevant factors:

> (A)    the class members' interests in individually controlling the
> prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy
> already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

When analyzing the superiority requirement in the context of Rule 23(c)(4), courts "have declined to certify [issue] classes where the prevalence of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." Parker, 2015 WL 127930, at *16 (citing Gates v. Rohm & Haas Co., 655 F.3d 255, 274 (3d Cir. 2011); In re St. Jude Med., Inc., 522 F.3d 836, 841 (8th Cir. 2008); McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 234 (2d Cir. 2008)); Farrar, 254 F.R.D. at 77 ("[A] district court should decline to certify issues where there are so many individual issues in the case that certifying the common issues would have a negligible effect on judicial efficiency.").

For example, in the aforementioned Farrar case, the Eastern District of North Carolina found that "the multiplicity of individual causation and affirmative defense issues" outweighed any "speculative increase in judicial efficiency that might be gained from certifying the common issues." Farrar, 254 F.R.D. at 78.[22]  Similarly, the court in City of St. Petersburg v. Total Containment, Inc. addressed a request to certify a number of specific issues under Rule 23(c)(4), which included the existence of a common defect. 265 F.R.D. at 646.  The St. Petersburg court, like the Farrar court, found that even if the

---

[22]    The Farrar court used this reasoning as the basis for alternative holdings on the issues of both predominance and superiority.  See Farrar, 254 F.R.D. 78 n.11 ("Alternatively, a class action would not be the superior method to handle this litigation. [] Individual trials are a better mechanism for handling this case in light of the multiplicity of individual issues.").  This is simply because the Farrar court adopted a different approach in evaluating commonality under Rule 23(c)(4).  See id. at 78 (looking to the entire cause of action in assessing predominance in Rule 23(c)(4) context).  While this court has assumed a different approach to predominance, the Farrar court's application of the superiority requirement remains highly relevant.  Moreover, if this court's departure from the Farrar court's approach to predominance is incorrect, this only strengthens the conclusion that certification is inappropriate.

common issues were resolved, numerous individual issues of causation and damages

would remain.  Id. at 641 ("[E]ven if Plaintiffs were able to demonstrate that FlexPipe

had a general defect, it would not assist Plaintiffs in meeting their burden of showing that

that particular defect was the legal cause of each class member's harm."); Id. at 642

("Calculating damages for each putative class member would necessarily require

significant amounts of individualized proof.").  The court then rejected the plaintiffs'

request for Rule 23(c)(4) certification, holding that the issues proposed for class

treatment "[were] either not easily determined on a class-wide basis or their resolution

would not advance [p]laintiffs' claims."[23]  Id. at 646 (emphasis added).  These cases

make clear that when evaluating superiority in the Rule 23(c)(4) context, the court must

look to the entire case to determine the value of class certification.  Even if class

treatment of a particular issue will advance the litigation, class certification may

nevertheless be inappropriate if that advance is insubstantial when measured against the

remaining issues.

     Thus, the value of settling the defect issue through a class trial must be considered

against the burdensome individual inquiries required to determine:  (i) whether the

original warranty claim caused by defect; (ii) whether any of Pella's affirmative defenses

apply; (iii) causation of each class member's damages; and (iv) the amount of such

damages.  As noted above, the court expects many of these inquiries to be particularly

fact-intensive.  Physical inspections of each class member's Windows are almost

---

[23]     Like the Farrar court, the St. Petersburg court conducted much of its analysis under the predominance prong and simply transferred its reasoning into the superiority context.  St. Petersburg, 265 F.R.D. at 644–45 ("[T]he same issues preventing common questions from predominating individual ones, also weigh against a class action as the superior method of resolving this case. The more individual issues predominate common ones, the more difficult it is to manage a class action.").  As discussed in the preceding footnote, while the court has adopted a different approach to the issue of predominance in the context of Rule 23(c)(4), the court finds the St. Petersburg court's analysis entirely applicable to the issue of superiority.

guaranteed.  The parties have already spent a great deal of time, energy, and money

examining the Windows owned by the named plaintiffs in this litigation, and numerous

disputes over the source of the damages remain.  <u>Compare</u> Dilly Mot. to Certify Class 2–

6 <u>with</u> Def.'s Resp. 10–14.  Determining when class members acquired notice of their

claims may also be susceptible to proof through physical evidence, or at least individual

testimony.  Moreover, class members who brought warranty claims after 2007 and

received replacement Windows would still need to litigate the issue of whether their

replacement Windows were defective.  It appears then, that resolving the defect issue

"would do little to increase the efficiency of the litigation."  <u>Parker</u>, 2015 WL 127930, at

*16.

       This is especially true when one considers the potential alternatives to class

certification.  As the <u>Parker</u> court recognized, there are a number of alternative litigation

tools available to prevent constant re-litigation of the defect issue.  <u>Id.</u> at *15.  "The use

of Fed. R. Civ. P. Rule 36 requests for admission, the submission of special verdicts[,]

and the possible subsequent use of collateral estoppel (either defensive or offensive),"

could provide many, if not all, of the benefits plaintiffs receive through class certification,

<u>see id.</u>, and while many courts note that class certification also "protects the defendant

from inconsistent adjudications," <u>Good</u>, 310 F.R.D. at 297 (quoting <u>Gunnells</u>, 348 F.3d at

427), if Pella has any say in the matter, the court suspects they will be willing to forego

such protection.

       Plaintiff points out that in <u>Saltzman</u>, the court recognized the individualized

inquiries required to prove causation, damages, and the statute of limitations, but still

found certification of the liability issue appropriate.  <u>Pella Corp. v. Saltzman</u>, 606 F.3d

391 (7th Cir. 2010) (affirming the district court's decision to certify).  However, Saltzman is distinguishable from the case at hand.  In Saltzman, there was no indication that the alleged defect was actually an amalgamation of multiple independent defects. See Saltzman, 606 F.3d at 392 ("Plaintiffs, owners of structures containing the windows in question, allege that the windows contain a design defect that permits water to seep behind the aluminum cladding and causes the wood to rot at an accelerated rate."). Moreover, the defect issue was not the only issue susceptible to class treatment.  See Saltzman, 257 F.R.D. at 484 (finding that "the predominant questions will be the scope of Pella's warranty, the nature of the PSEP and whether it amended the warranty, whether and when Pella ProLine Windows suffered from an inherent wood "durability" defect, whether and when Pella knew of the defect, and whether and when Pella publicly announced the defect and the PSEP").  Finally, Saltzman did not contain a breach of express warranty claim. Id. at 474–75.  In this case, the unique nature of that claim makes it necessary to determine the cause of the issues underlying each class member's original warranty claim.  This adds an entirely new set of causation questions to the ordinary issues of damage causation.  In light of these distinctions, the Saltzman litigation was more likely to be advanced by class certification than this case.

Though the court recognizes it "is not required under Rule 23 . . . to sacrifice class adjudication of a driving issue . . . simply because many individualized inquiries will remain thereafter," Good, 310 F.R.D. at 298, the court is not convinced that the defect issue in this case is sufficiently "driving" to warrant such treatment.  This is not to say that the parties have not expended significant resources on that issue to this point.  Indeed they have, and the court recognizes that many class members do not have enough at stake

to justify such intense litigation efforts on their own account.  However, this incentive problem is not solved by issue certification where the remaining individualized issues will also require significant resources.  Moreover, if the alleged defects are as uniform as plaintiff suggests, then much of the information other class members need to bring their case may already be available.  But even if it is true that the defect issue makes this litigation prohibitively expensive for many class members, that fact alone is insufficient to justify class certification.  Even under Rule 23(c)(4), superiority cannot be judged in a vacuum; the court must consider whether "resolution of the[] [c]ommon [i]ssue[] will [] bring [p]laintiffs significantly closer to their goal of recovery."  Parker, 2015 WL 127930, at *16.  This court concludes that it would not.

Therefore, court finds that class certification—even on the limited issue of whether the Windows contained a defect—is not superior to other methods of adjudication.

## IV.   CONCLUSION

Based on the foregoing, the court **DENIES** plaintiff's motion for class

certification.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 3, 2016**
**Charleston, South Carolina**